TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
(TORT) — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 04-3746

MIDDLESEX ............ , ss
[seal]

Eli Mistovich, Jr. .............. , Plaintiff(s)

v.

Elizabeth Bowden, Stephen Urbanski,
Stephen Nevero & Alison Leato ......... , Defendants

### SUMMONS

To the above-named Defendant:   Stephen Nevero

You are hereby summoned and required to serve upon ...Frank J. Teague, Esq............................

....................................... plaintiff's attorney, whose address is Frank J. Teague & Associates One Liberty Square, 4th Floor Boston, MA 02109, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at ...Cambridge.................. ................................... either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

in Witness, Suzanne V. DelVecchio, Esquire, at .....Cambridge.........................................................

the .......6th............................... day of ......October..................... ,

..................., in the year of our Lord ........2004.................. .

*[signature]*
Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 04-3746 | Trial Court of Massachusetts Superior Court Department County: MIDDLESEX |
|---|---|---|

**PLAINTIFF(S)**
Eli Mistovich, Jr.

**DEFENDANT(S)** Elizabeth Bowden, Stephen Urban, Stephen Nevero and Alison Leaton

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE** Frank J. Teague
Frank J. Teague & Associates
One Liberty Square, 4th Floor, Boston, MA 02109
Board of Bar Overseers number: 493780

**ATTORNEY** (if known)

### Origin code and track designation

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO. B99
TYPE OF ACTION (specify): Intentional Interference with advantageous relationship
TRACK: F
IS THIS A JURY CASE? (x) Yes ( ) No

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ... $
2. Total Doctor expenses ... $
3. Total chiropractic expenses ... $
4. Total physical therapy expenses ... $
5. Total other expenses (describe) ... $
   Subtotal $
B. Documented lost wages and compensation to date ... $
C. Documented property damages to date ... $ 29,000.00
D. Reasonably anticipated future medical and hospital expenses ... $
E. Reasonably anticipated lost wages ... $
F. Other documented items of damages (describe) ... $
   COBRA Health Insurance Payments $ 7,500.00
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
   Loss of job, loss of pension benefits (to be determined)

TOTAL $ 36,500.00 +

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

TOTAL $

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _Frank J. Teague_  DATE: 9/22/04

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

MIDDLESEX, ss.                               SUPERIOR COURT DEPARTMENT
                                             CIVIL ACTION NO. 04-3746

ELI MISTOVICH, JR., )
    Plaintiff, )
)
v. )
)
ELIZABETH BOWDEN, )
STEPHEN URBAN, )
STEPHEN NEVERO and )
ALISON LEATON )
    Defendants. )

## COMPLAINT

### PARTIES

1. Plaintiff Eli Mistovich, Jr., is a resident of Londonderry, New Hampshire. For 28 years prior to March 30, 2004, Plaintiff Mistovich was employed by employers involved in railroad operations and Plaintiff was a participant in the Railroad Retirement System. Plaintiff worked for 3 years with Conrail; 25.5 years with Amtrak (including 16.5 years while Amtrak operated the commuter rail lines for the Massachusetts Bay Transportation Authority ("MBTA")); and 9 months with Amtrak's successor in operating MBTA commuter lines, the Massachusetts Bay Commuter Railroad Company ("MBCR").

2. At material times hereto, Plaintiff's job assignment with Amtrak and MBCR was Assistant Division Engineer in the Track Division. Plaintiff's job responsibilities included, inter-alia, supervising over 170 employees in track maintenance; overseeing capital and infrastructure improvements; meeting budgetary goals; contract administration; customer service; consulting with outside attorneys in defense of suits; interacting with union representatives over collective bargaining issues; and

interviewing and hiring new employees.

3. In July of 2003, MBCR succeeded Amtrak in the operation of the MBTA's commuter rail service and most Amtrak employees, including Plaintiff, were transitioned from Amtrak to MBCR with the same job titles, responsibilities, wages and employment benefits.

4. Defendant Elizabeth Bowden is a resident of Cambridge, Massachusetts. Defendant Bowden is employed as MBCR's Human Resources Chief.

5. Defendant Stephen Urban is a resident of Attleboro, Massachusetts and is employed as MBCR's Assistant General Manager.

6. Defendant Stephen Nevero is a resident of Billerica, Massachusetts and is employed as MBCR's Chief Engineer. On or about March 30, 2004, Defendant Navero was Plaintiff's immediate supervisor.

7. Defendant Alison Leaton is, on information and belief, a resident of Brookline, Massachusetts. In the time period September 2003, through March, 2004, Defendant Leaton was employed by an independent contractor to MBCR handling certain recruiting and employee hiring responsibilities.

## MBCR's HIRING IN 2003 AND 2004

8. During his employment as Assistant Division Engineer at Amtrak and later MBCR, Plaintiff worked many nights, weekends and extra hours to do his job and to fill in during snowstorms and other emergencies. Plaintiff's job performance evaluations were always satisfactory or better. He was never the subject of any disciplinary action, nor did he receive any warnings from supervisors for unsatisfactory performance.

9. Starting in 1980, Plaintiff Mistovich had participated in interviewing and hiring new employees in the Track Division at Amtrak. In his Amtrak job performance evaluations, Plaintiff was always rated as satisfactory or better and was commended as having "often exceeded expectations" in "valuing diversity". He was specifically commended on several occasions for exceeding company guidelines in hiring minority and female candidates and in supporting and achieving company policies regarding diversity, affirmative action, equal opportunity, and non-discrimination. Plaintiff has hired and supervised minority and women employees over the years and during over 28 years of employment has never been the subject of any complaints of discrimination.

10. In the winter of 2003, Plaintiff was informed by his supervisors at MBCR that there was a need to hire up to eight entry-level trackmen to replace attrited employees. At this time, the Track Division was short-handed and had been short-handed for some time. This adversely impacted the Division's ability to handle emergency duties, particularly snow removal. Plaintiff is informed and believes that understaffing has resulted in a higher risk of serious injuries of passengers and the death of at least one MBCR employee.

11. At Amtrak, Plaintiff had worked with the Human Resources Department in the hiring process. He had accumulated resumes that were sent to him from time to time over the years and forwarded them to the Human Resources Department when jobs were posted. The HR Department generally supplemented these resumes with others that it had received through recruiting or other sources.

12. In the fall of 2003, Defendant Leaton, working for an independent contractor

3

consultant for MBCR, contacted Plaintiff concerning the hiring of the eight new trackmen. In the winter of 2003-2004 Plaintiff forwarded 60 resumes to Defendant Leaton to review and select candidates for interview. Defendant Leaton then contacted Plaintiff, expressed annoyance with the large number of resumes he had sent and specifically requested Plaintiff to narrow the resumes down to 10 to 15 candidates.

13. The job posting requirements for the trackman position included a commercial drivers license and/or hoisting license. In response to Defendant Leaton's request to narrow the resume list, Plaintiff eliminated everyone without a commercial drivers license, hoisting license or other skill such as welding which was useful to the Track Division. Plaintiff included one resume of an individual without the appropriate licenses at the specific request of his counterpart in the MBTA. Plaintiff then forwarded the narrowed group of 15 resumes to Defendant Leaton. No resumes of candidates with a commercial drivers license or hoisting license were excluded.

14. On March 4th and 5th, 2004, Defendant Leaton scheduled interviews for the 15 candidates whose resumes Plaintiff had selected. Several of these candidates did not appear for interviews on March 4th and Defendant Leaton informed Plaintiff that they should select additional candidates from other resumes which Defendant Leaton had obtained from the internet and other sources to substitute for the candidates who did not appear for interviews on March 4, 2004.

15. One of the resumes which Defendant Leaton asked Plaintiff to review was that of a candidate named Marvin Morgan from Dorchester, Massachusetts. After a quick review of the resume, Plaintiff commented that Mr. Morgan had a commercial drivers

4

license but no other exceptional qualifications such as a hoisting license, welding skills or pesticide expertise. However, Plaintiff agreed with Defendant Leaton that Morgan should be placed on the interview list.

16. Defendant Leaton and Plaintiff scheduled interviews with the remainder of Plaintiff's original list and additional candidates selected by Leaton and Plaintiff on March 5th and 11th, 2004, including the aforementioned Marvin Morgan. A diversity representative of MBCR's Human Resources Department was present during all the interviews. Mr. Morgan is black, a fact which was not known to Plaintiff until the interview. After the interview, Plaintiff and Defendant Leaton selected Morgan as one of 6 individuals to be hired.

17. On Monday, March 29, 2004, the aforementioned Marvin Morgan started his employment with MBCR. That morning, Plaintiff observed Mr. Morgan reporting for training at the wrong location, pointed this out to Mr. Morgan, and actually drove him to the appropriate location.

## TERMINATION OF PLAINTIFF'S EMPLOYMENT FOR "DISCRIMINATION"

18. On Wednesday, March 24, 2004, Plaintiff took a compensation day off from work. On that date he received an e-mail from Defendant Bowden, MBCR's Human Resources Chief, requesting that Plaintiff meet with her and Defendants Urban and Nevero on Friday, March 26, 2004. On Thursday, March 25, 2004, after receiving Defendant Bowden's e-mail, Plaintiff called her office and left a voicemail agreeing to the meeting and requesting a return call as to what the subject of the meeting would be so he could prepare. Plaintiff's only prior interaction with Defendant Bowden had been over some mix-ups in the transfer of life insurance benefits for himself and his

5

wife when MBCR succeeded Amtrak in the MBTA's commuter rail service operations. Defendant Bowden did not return Plaintiff's telephone call.

19. At a meeting on March 26, 2004, attended by Defendants Bowden, Urban, Nevero and Plaintiff, Defendant Bowden abruptly informed Plaintiff that the purpose of the meeting was allegations that he had engaged in "racial discrimination" in the selection of resumes for interviews based upon where the candidates lived. Bowden stated that it was "felt" that Plaintiff did not want to consider Mr. Morgan as a candidate because his resume indicated that he was from Dorchester, Massachusetts, an indication, according to Bowden, that Morgan was black.

20. At the time of the meeting, Plaintiff was taking blood pressure medication which slightly slowed his reactions and speech. Plaintiff was stunned and shocked at the accusation of discrimination and the tone with which it was delivered. Plaintiff took some time to gather himself and to try to remember the details of Morgan's selection as a candidate more than three weeks prior to the meeting. He barely recalled reviewing Morgan's resume more than three weeks earlier and did not even notice when he reviewed Mr. Morgan's resume where Morgan had lived. Plaintiff pointed out to Defendants Bowden, Urban and Nevero that he had agreed that Morgan should be interviewed; participated in the interview; and in the selection of Morgan to hire.

21. Bowden's response was that she, Urban and Nevero considered Plaintiff's delayed reaction as "stonewalling" the accusation. Plaintiff was at this point completely confounded and pointed out to Defendant Bowden that she had not returned his telephone call requesting that he be informed of the subject of the meeting. All three Defendants were supervising Plaintiff and had obviously met and discussed the

accusation without informing Plaintiff.

22. The assertion by Defendants Bowden, Urban and Nevero at the meeting that Plaintiff knew that candidate Morgan was black during the resume selection process because candidate Morgan was "from Dorchester" is false, without reasonable basis and was done with actual malice. People of all races live in Dorchester and, in fact, Plaintiff did not even notice where candidate Morgan or any other candidate was from when he reviewed their resumes. Plaintiff was extremely upset and disturbed by the accusation of discrimination which Defendants Bowden, Urban and Nevero had made with no basis in fact.

23. On Tuesday, March 30, 2004, Plaintiff was summoned to another meeting with Defendants Bowden, Urban and Nevero in Nevero's office at 3:00 p.m. At the meeting, Plaintiff was informed by Defendant Nevero, with no prior warning, that his employment was terminated effective immediately. Plaintiff was presented with two letters, one a proposed "resignation" and one a termination. Plaintiff was completely shocked and stunned.

24. Plaintiff then inquired as to why he was being fired. Defendant Nevero replied that it was based on the fact that Plaintiff had discriminated in his screening of candidate's resumes based on "geography". Plaintiff was informed by Nevero that Plaintiff had had the opportunity at the previous Friday meeting to "set the record straight" but had failed to do so. Defendant Bowden then stated that there was also an issue concerning "female candidates". No explanation was provided to Plaintiff as to what this "issue" was.

25. At the meeting on March 30, 2004, Defendant Nevero informed Plaintiff that if he

were to "resign" rather than accept termination, MBCR would inform future employers checking references that Plaintiff had "resigned for personal reasons" rather than inform them of Plaintiff being "terminated for cause". Plaintiff refused to participate in this lie, and walked out of the office. Defendant Urban thereafter followed Plaintiff into his office and instructed Plaintiff to return his identification badge and all other company materials. Defendant Urban insisted that Plaintiff clean out and turn over the keys of his company truck in full view of other employees in the building parking lot in a humiliating fashion.

**INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS RELATIONSHIP**

26. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 25 above.

27. Plaintiff as a railroad employee for over 28 years, and as Assistant Division Engineer held a position of responsibility with MBCR based on his competency, skill and experience. On March 30, 2004, Plaintiff's salary was $70,000 per year, plus benefits including health insurance and a pension. Plaintiff was less than 16 months short of the required service in the Railroad Retirement System to make him eligible for retirement at age 60.

28. The statements of Defendant Leaton in accusing Plaintiff of racial and sexual discrimination in the resume selection process were false, totally groundless, unprivileged and malicious. The actions of Defendants Bowden, Urban and Nevero in placing any credibility in such specious accusations; interviewing Plaintiff on March 26, 2004, together and in a hostile and confrontational manner, and abruptly accusing him of discriminatory hiring practices with no advance warning; concluding,

8

based on Plaintiff's stunned reactions to such false and shocking allegations, that he was "stonewalling" the accusations, and then deciding to terminate his employment after more than 28 years as a railroad employee based on such allegations and an additional undisclosed allegation of sexual discrimination were without reasonable grounds and done intentionally and with malice.

29. The actions of Defendants Leaton, Bowden, Urban and Nevero in causing the termination of Plaintiff's employment were committed intentionally and without privilege and have cost Plaintiff the loss of his advantageous employment relationship, and the loss of wages and benefits including a substantial impairment of his railroad pension rights. Plaintiff's lost wages and health insurance benefits amount to at least $30,000, and the damage to his pension rights must be determined by an actuary, accountant or other financial professional.

WHEREFORE Plaintiff requests the following relief:

1. Monetary damages against Defendants in such amount as the Court determines;
2. Such other relief as the Court deems appropriate.

**JURY DEMAND**

Plaintiff claims a trial by jury.

Respectfully submitted,
Plaintiff Eli Mistovich, Jr.

Dated: 9/22/04

Frank J. Teague, Esq.
Frank J. Teague & Associates
One Liberty Square, 4th Floor
Boston, MA 02109
(617) 350-7700
BBO# 493780