## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELI MISTOVICH, Jr.             ) <br>         **Plaintiff**         ) <br>                                ) <br> **V.**                            ) <br>                                ) <br> **ELIZABETH BOWDEN, STEPHEN**   ) <br> **URBAN, STEPHEN NEVERO and**    ) <br> **ALISON LEATON,**                    ) <br>         **Defendants**        ) <br>                                ) | **CIVIL ACTION NO. 04-12340-EFH** |

### JOINT PRE-TRIAL MEMORANDUM

Now come the parties, plaintiff Eli Mistovich, Jr., and defendants Elizabeth Bowden, Stephen Urban, and Stephen Nevero, and pursuant to Local Rule 16.5 submit the following Joint Pre-Trial Memorandum.

## I.   CONCISE SUMMARY OF THE EVIDENCE

### A.   To Be Offered by Plaintiff:

Plaintiff Eli Mistovich will testify that he is a civil engineer and, until March 30, 2004 was a 28 year railroad management employee.  He had worked for Penn Central, Conrail and Amtrak, commencing his employment with Amtrak in 1978.  From 1987 through 2003, Plaintiff was the Assistant Division Engineer of the Track Division with Amtrak's Commuter Rail Service in Boston.  In 2003, the Massachusetts Bay Commuter Railroad ("MBCR") succeeded Amtrak as the Boston area commuter rail service operator for the MBTA commencing on July 1, 2003.  MBCR hired almost all of Amtrak's Boston commuter rail service employees including

Plaintiff.  Plaintiff's employment with MBCR started on July 1, 2003.

In his 26 years of employment in Amtrak's track division, including his 18 years of service with the Commuter Railroad, Plaintiff interviewed and made decisions on 99% of the hirings.  He reviewed thousands of resumes and interviewed over 1,000 applicants.  Plaintiff's written job performance evaluations at Amtrak were always satisfactory or better during his twenty six years of employment.  Between 1989 and 2000, Plaintiff received at least eight written commendations for diversity in hiring, exceeding minority hiring goals and adhering to Amtrak's affirmative action and equal opportunity in employment policies.  Fellow employees who worked with Plaintiff at Amtrak and/or MBCR will testify to Plaintiff's non-discriminatory hiring and supervisory practices.

In the fall of 2003, there was a shortage in the track division at MBCR and there was authorization for Plaintiff to hire additional employees.  Defendant Elizabeth Bowden was head of MBCR's Human Resources Department and hired a contract consultant named Alison Leaton for a six month contract to handle recruitment.  Neither Bowden nor Leaton had any experience in hiring entry level railroad personnel; nor any idea of the qualifications necessary to succeed on the job.  Plaintiff was instructed to coordinate his hiring process with Alison Leaton.

 When he first spoke to Leaton, Plaintiff had accumulated approximately 60 resumes.  In his initial discussions with Leaton, Plaintiff informed her of the qualities he was looking for in entry level trackmen and sent the resumes to Leaton with the intention that he and Leaton interview all 60 candidates.  Leaton instructed Plaintiff to narrow this list down to 10 prospective candidates.  Plaintiff persuaded Leaton to raise the number to 15 and in November of 2003, Plaintiff and Leaton interviewed 9 candidates whom Plaintiff had selected.  They decided to hire 2 of these candidates.

In January of 2004, Plaintiff forwarded Leaton a list of 40 more resumes which he had received since the last round of interviews.  He made a list of these resumes and again on Leaton's instructions narrowed this list to 15 candidates based on railroad, construction and labor experience.  Leaton scheduled 10 interviews from this list on March 4th and 5th, 2004.  On Thursday March 4, 2004, three candidates scheduled for interviews by Leaton failed to show up.  Seven candidates were interviewed by Plaintiff and Leaton and three were hired.  Plaintiff and Leaton discussed the need for at least one more day of interviews to fill the remaining vacancies and Leaton handed Plaintiff a stack of between 20 and 24 other resumes which she had in her possession.  Plaintiff did not know where these resumes came from and started looking through them.  Some of them he had not seen before.  Leaton, as a contract recruiter, received resumes from various outside sources.  Additionally, on instructions from Bowden, Leaton had advertised the position in the Bay State Banner, a community newspaper serving Boston's black community.  Leaton did not advertise the position in any other newspaper.  Among the resumes given to Plaintiff by Leaton was that of a candidate named Marvin Morgan whose address was listed as 194 Normandy Street, Dorchester, MA.  Plaintiff had no recollection of seeing Morgan's resume before and it was not on the list of resumes which Plaintiff had previously forwarded to Leaton.  Plaintiff briefly looked at Morgan's resume and put it down without making any determination.  Leaton immediately and animatedly accused Plaintiff of "excluding" the resume from further consideration because Plaintiff thought that Morgan was black.  Plaintiff did not comprehend what Leaton was talking about.  He again looked at the resume and did not know how to determine Morgan's race.  On further reviewing the resume, Plaintiff noted that Morgan had a CDL, but no construction or railroad experience.  Plaintiff informed Leaton that based on his brief review of the resume, Morgan did not appear to be what Plaintiff considered to

3

be an above average candidate. Plaintiff explained that he usually had not had good luck with candidates whom he considered below average. Leaton insisted that it was illegal not to interview a "qualified" minority insisting on injecting a racial issue into the discussion. Plaintiff concluded that Leaton must have been aware that Morgan was black since there was no reasonable way for him to determine from the resume what Morgan's race was. Plaintiff then handed all of the resumes back to Leaton to select the interviewees. He voiced no opinion on which resumes he thought should be selected further and had no objection to hiring Morgan or anyone else in the pile since his main concern was hiring additional candidates.

On March 11, 2004, Plaintiff and Leaton agreed to interview three candidates including Marvin Morgan. A member of MBCR's diversity committee, formerly Amtrak's diversity committee, was present at the Morgan interview as well as the other interviews. Plaintiff saw during the interview that Morgan was black. After the interview, at which Morgan had presented himself well, Plaintiff agreed to hire him. Plaintiff thought nothing further of the matter and resumed his duties as assistant division engineer of the track division.

Between March 11 and March 26, 2004, Leaton made repeated oral and written accusations to Bowden of Plaintiff's alleged racist attitudes in seeking to exclude black candidates. Bowden made no effort to inform Plaintiff of these accusations and accepted them as true. Bowden made no inquiry of Plaintiff's fellow employees, notwithstanding the fact that numerous former supervisors, peers and subordinates were working for MBCR as a result of the transition from Amtrak. Bowden made no effort to find information about Plaintiff's hiring practices at Amtrak.

Thereafter, Leaton's accusations were circulated by Bowden among MBCR's general manager, deputy general manager, general counsel and chief engineer and at least one other HR

employee.  Bowden met with Leaton and either Defendant Stephen Neverro or Stephen Urban on March 15, 2004 to discuss Leaton's accusations.  Bowden, Leaton and another HR employee of MBCR had one other meeting to discuss the subject.  Bowden prepared a summary of Leaton's statements and forwarded the summary to Leaton for review and comment.  Leaton informed Bowden that there was "no room for misinterpretation of Plaintiff's racist attitude".  Leaton acknowledged that Plaintiff did not say or do anything differently before, during or after the interviews of minority candidates and that after Morgan's interview, Plaintiff indicated he would hire Morgan.

Thereafter Bowden determined that she should conduct an "investigation" into Leaton's accusations.  Bowden had never conducted an investigation of racial discrimination before.  For three weeks, Plaintiff had received no information that these accusations were made, nor was he given an opportunity to respond to them.  On March 25, 2004, Plaintiff received an innocuous sounding e-mail from Bowden requesting a meeting the next day, March 26th, to address hiring concerns in the track division.  Plaintiff left a voicemail with Bowden requesting the purpose of the meeting and was not given any reply.  Plaintiff walked into the March 26, 2004 meeting and was confronted by Bowden and Defendants Urban and Neverro.  At the time, Plaintiff was taking high blood pressure medication and had extreme difficulty concentrating and had vision problems in his right eye due to a burst blood vessel.

Bowden started off the meeting by immediately accusing Plaintiff of racism in hiring.  Her tone of voice and body language were extremely accusatory.  Bowden stated that she had a report from Leaton that Plaintiff was eliminating qualified applicants because of their name and home addresses indicating that they were black.  Plaintiff was stunned and shocked by the accusations.  In his 26 years of hiring experience, Plaintiff had made efforts to accomplish

affirmative action and meet diversity goals in hiring minorities and had been commended by his employers for achieving these goals.  An accusation of racism is a loaded charge.  It had been more than three weeks since his brief conversation with Leaton and Plaintiff did not even remember what had been said.  Additionally, Plaintiff was in an impaired state due to his high blood pressure medication and initially had no idea what Bowden was talking about.

Plaintiff sat in stunned silence as Plaintiff went on leveling quotes at Plaintiff which had been provided by Leaton in writing and which Plaintiff never had the opportunity to see, review or formulate a response to.  Plaintiff compared the accusations in the presence of the two other managerial employees as "Spanish Inquisition".

As Bowden went on, Plaintiff eventually began to recall pieces of the conversation he had with Leaton three weeks previously.  He tried to point out that he had hired Morgan and did not understand what the problem was.  He also noted that he had much experience in selecting candidates and his goal was always to select the best and that he had always exceeded diversity goals in his hiring at Amtrak.  Bowden continued leveling quotes at Plaintiff from Leaton and asked Plaintiff if he had made certain statements.  Plaintiff struggled to recall the exact statements that were made and the context in which he made them.  Plaintiff did not know how to respond any further but to confirm that he always selected the best statement regardless of race.

Bowden then said that she concluded from Plaintiff's stunned silence as "stonewalling" and an admission of the accuracy of Leaton's comments.  Plaintiff's only rejoinder was that it seemed Bowden, Urban and Neverro had already made up their minds and left the meeting in shock.

On March 30, 2004, Plaintiff was summoned, again with no advance notice, to meet with

Bowden, Neverro and Urban at the Somerville office and was informed that he was terminated from his employment because he had screened applicants based on race.  Plaintiff was given the option of resigning in which case future employment references would be informed that he voluntarily left employment, or being terminated for cause.  Plaintiff was again shocked and stunned, however, he refused to resign because it was a fabrication and a falsehood. He was summarily marched out of the room by Urban and forced to clean out his office and company vehicle in full view of other employees, a humiliating experience.

With respect to damages, Plaintiff's annual wages at the time of his termination were $70,665.50 per year.  Plaintiff was unemployed for a total of 5 months, before he obtained a job with the Massachusetts Bay Transit Authority.  His lost wages were $29,444.00 less monies earned as an independent contractor and part time consulting engineer in the amount of $9,711.52.  Thus Plaintiff's lost wages were $19,732.48

Additionally, Plaintiff had to make COBRA payments for himself and his family for five months at the rate of $1,530 per month or $7,650.  Additionally, Plaintiff has lost vacation benefits of five weeks per year, or $6,794.68, and the life insurance benefit of $723 per year for the last two years ($1,446.00).  The total lost wages and benefits to date are $35,623.16.

Plaintiff lost retirement benefits through loss of employment with an employer covered by the federal Railroad Retirement Board.  However, in January of 2006, Plaintiff accepted employment with Amtrak and thus his railroad retirement pension benefit eligibility has been restored.

Finally, Plaintiff is claiming damages for emotional distress in an amount to be determined by the jury.

> **B.** **To Be Offered by Defendants:**

Inasmuch as this claim is against several defendants, whose liability is to be independently and separately determined, the defendants address the evidence concerning each defendant separately:

**<u>Defendant Elizabeth Bowden</u>:**

The evidence will show that in March 2004 Elizabeth Bowden was in charge of the human resources functions for MBCR.   On or before March 11, 2004, Bowden received a verbal report from an MBCR contract recruiter, Alison Leaton, that one of MBCR's hiring managers, Eli Mistovich, was discriminating against a black applicant for the position of trackman. Bowden asked for Leaton to put her concerns in writing.  In an e-mail response, Leaton reported that Mistovich "did not want to interview a person who was, based on name and where he lived being Eli's assumption, that he was black," and that Leaton had pressed Mistovich, and that Mistovich had responded that "he'd not had 'good luck' with people 'like that' in the past" and that there was a "'greater percentage' of people like that" who had been "problems for him."

Bowden conducted the investigation into Leaton's allegations.  On March 15, 2004, Bowden and her assistant, Beth Trowbridge, met with Leaton to obtain additional information. Bowden asked Leaton whether Mistovich's comments could have been misinterpreted.  Leaton reported that there was no room for misinterpretation.

On March 26, 2004, Bowden (along with Nevero and Urban) met with Mistovich.  At this meeting, Bowden explained to Mistovich that the reason for the meeting was a report from the recruiter, Alison Leaton, that Mistovich was eliminating qualified applicants because of their name and address under the assumption that they were black.  Bowden went on to explain that Leaton has reported that Mistovich had declined to interview a certain applicant, reportedly saying that he had had trouble with "people like that" in the past.

Mistovich told Bowden, Nevero and Urban that this was correct – and that he had, in fact, had trouble with "people like that," and that he had records to validate this statement. Later in the meeting, Bowden asked for Mistovich to clarify his comment, but Mistovich declined, other than indicating that he had had problems. Bowden also asked for Mistovich to respond to Leaton's claim that he was refusing to interview qualified applicants because of their name and address on the assumption that they were black. Mistovich responded that he always tried to select the best or above average candidates, but he did not provide any further clarification, and he did not deny Leaton's allegations.

Bowden told Mistovich that, in the absence of anything further from him, the information from the recruiter would be considered accurate and without objection. Mistovich responded that it sounded as if Bowden had already made up her mind and he did not provide any further information.

On March 29, 2004, MBCR General Manager Kevin Lydon met with Bowden (along with Urban, Nevero and MBCR General Counsel Richard Davey) to follow up on the investigation. Bowden went over the notes she had taken at the meeting. Lydon decided to terminate Mistovich's employment.

Mistovich has no evidence of "actual malice" and hence no evidence that Bowden abused the conditional privilege afforded managers – instead, the evidence shows that Bowden acted upon information from the contract recruiter, conducted an investigation, and concluded that Mistovich was discriminating in the hiring process.

**<u>Defendant Stephen Urban</u>:**

The evidence will show that in March 2004 Stephen Urban was MBCR's Deputy General Manager. MBCR General Manager Lydon informed Urban that there was an allegation that Eli

Mistovich was excluding prospective candidates from the hiring pool based on where they lived. Lydon asked Urban to participate in the meeting with Eli Mistovich to determine if there was any truth to the allegation.

Urban attended the March 26 meeting with Mistovich.  Based on Mistovich's responses to Bowden's questions, Urban believed that Mistovich had admitted to screening out candidates from certain areas of the city.  In particular, Urban recalled Mistovich responding, "in a moment of candor" that it was "true" that he was excluding certain applicants, and that Mistovich had gone on to say that "he had problems with these people in the past," implying that from "where they came from, they were most likely" minority candidates, and that Mistovich had added "that he had files and records that he had difficulty with these people once they were hired."  The evidence will show that Mistovich does not deny making these statements during the meeting.

Urban attended the March 29, 2004 meeting with General Manager Lydon, at which point the details of the investigation were discussed, and Urban communicated what happened at the March 26 meeting.

Mistovich has no evidence of "actual malice" and hence no evidence that Urban abused the conditional privilege afforded managers – instead, the evidence shows that Urban merely sat in on the meeting with Mistovich, at the general manager's direction, and reported Mistovich's responses to Bowden's questions.

### **Defendant Stephen Nevero:**

The evidence will show that in March 2004 Stephen Nevero was MBCR's Chief Engineer and Mistovich's immediate supervisor.  Either MBCR General Manager Lydon or Elizabeth Bowden informed Nevero of Leaton's allegations and asked Nevero to sit in on the meeting with Mistovich to determine if there was any truth to those allegations.

Nevero attended the March 26 meeting with Mistovich.  Based on Mistovich's responses to Bowden's questions, Nevero believed that Mistovich had admitted to screening out candidates from certain areas of the city.  Nevero recalled that Mistovich stated "something to the effect that he had a problem with those types of people and he could produce a box of documents," and in Nevero's notes of the meeting, he wrote:  "Mr. Mistovich's initial response to Elizabeth Bowden's question "Did you say to Alison Leaton that you had trouble with them" was "I can show you a box of documents in my office that will show you the problems."  The evidence will show that Mistovich does not deny making these statements during the meeting.

At the March 29, 2004 meeting with General Manager Lydon, Nevero communicated what happened at the March 26 meeting, and also suggested that Mistovich could be demoted to a position without hiring authority, instead of terminated.

Mistovich has no evidence of "actual malice" and hence no evidence that Nevero abused the conditional privilege afforded managers – instead, the evidence shows that Nevero merely sat in on the meeting with Mistovich and reported Mistovich's responses to Bowden's questions.

**Alison Leaton:**

Alison Leaton was never served with a copy of the complaint and hence was never made a party to this action.  Mistovich's attorney is now asking whether Leaton will waive service.  He has indicated that if Leaton does not waive service, Mistovich will allow the matter to be dismissed against her without prejudice and then bring a separate action against her in state court.

In the interest of judicial economy, Leaton is considering waiving service of the complaint, but would want to have the opportunity to argue for summary judgment on her behalf. If Leaton is brought into this action, the evidence will show:

11

In March 2004, Leaton was a contract recruiter working for MBCR.  She was responsible for hiring and filling open positions at MBCR.  Mistovich was hiring track employees and Leaton, as recruiter, was assisting him in this process.  After some candidates failed to show up for interviews, Leaton and Mistovich spoke about the need to consider additional candidates.  Leaton gave Mistovich a stack of resumes to go through.  One resume was for a candidate named Marvin Morgan, who Leaton thought was a qualified candidate.  Mistovich told Leaton that he did not want to interview Morgan because he had not had "good luck" with "people like that."

Leaton believed that Mistovich was relying on Morgan's listed home address (Dorchester) and name to conclude that Morgan might be black.  Leaton understood that Dorchester was a predominantly black area of Boston, and that the name "Marvin" could be an indication that a person was black.  Mistovich does not challenge the fact that Leaton believed that he was discriminating.  Leaton did not know Morgan's race at the time.

Leaton told Mistovich that what he was doing was against the law and that they needed to interview Morgan.  At his deposition, Mistovich gave the following account: "As I was sorting through the pile looking at each one, this one particular resume, as soon as I was putting – I'd examine them.  I'd put them aside.  And as soon I put one aside in particular, she yelled across the table, You're excluding that resume because with the name Marvin Morgan and being from Dorchester, you think he's a minority.  That's discrimination."  [Mistovich Dep. at 178.]

Leaton told Mistovich that she was not going to make him hire a candidate who was not qualified, but that if the person were qualified, she would go to the mat.  Mistovich responded that he was not going to win the argument and he saw no point in getting into a discussion that he was not going to win.  Based on Leaton's urging, Mistovich agreed to interview Morgan, who

was eventually hired.

On or about March 11, 2004, Leaton reported her concerns about Mistovich to Bowden. Leaton later responded to questions from Bowden. Mistovich does not challenge the fact that Leaton believed he was discriminating.

Mistovich has no evidence that Leaton acted for an improper motive or used improper means – instead, the evidence shows that Leaton merely informed Bowden of what had happened in the screening process and Leaton's concerns that Mistovich was engaging in unlawful discrimination.

**Defendants' Statement Regarding Damages**: Plaintiff contends that he is entitled to lost compensation and benefits, amounting to approximately $35,000, and emotional distress damages. Defendants state that plaintiff has inflated his damages in several ways. For example, the claimed lost vacation benefits are not recoverable – the compensation for vacation is included within an employee's gross wages and is not a separate item. Defendants also state that even if plaintiff could establish any damages, none of the damages are attributable to any wrongful acts on the part of any individual defendant.

## II.    FACTS ESTABLISHED BY PLEADINGS OR STIPULATION

1.    Plaintiff Eli Mistovich, Jr. is a resident of Londonderry, New Hampshire.

2.    MBCR is a limited liability corporation with its principal place of business in Boston. On July 1, 2003, MBCR succeeded Amtrak in operating the MBTA's commuter rail services in the greater Boston area.

3.    After being awarded the MBTA contract and succeeding Amtrak, MBCR offered employment to almost all Amtrak union and management employees below the highest level who had worked on the MBTA's commuter rail contract as of a certain date. Approximately

1600 Amtrak employees, including Plaintiff Mistovich, transitioned their employment to MBCR to operate the commuter railroad on and after July 1, 2003.

4.      Defendant Elizabeth Bowden is presently a resident of Canada and a Canadian citizen.  Defendant Bowden was employed by MBCR from September of 2003 to July of 2005 as Manager of Organizational Development.  In that position, her duties were to lead and coordinate MBCR's Human Resources functions.

5.      Defendant Stephen Urban has been employed by MBCR since May of 2003.  His initial position was the Assistant Manager of Transportation.  In January of 2004, he became the Deputy General Manager.

6.      From July of 2003 through the present, Defendant Stephen Nevero has worked as a contract consultant with MBCR.  He has served in the position of Chief Engineer, responsible for directing and overseeing maintenance and construction of tracks, bridges, buildings and the signal system.  Defendant Nevero was Plaintiff's immediate supervisor when Plaintiff worked for MBCR.

7.      Alison Leaton is a resident of Brighton, Massachusetts.  Between September of 2003 and April of 2004 Alison Leaton worked at MBCR as a contract recruiter, assisting in hiring applicants to fill open positions.

8.      Plaintiff was involuntarily terminated from his employment by MBCR on March 30, 2004.


III.    **CONTESTED ISSUES OF FACT**

Plaintiff presents the following contested issues of fact:

1.      Whether Plaintiff intentionally attempted to avoid interviewing an entry level

14

trackmen candidate on the basis of race on March 4, 2004.

2.      Whether Defendants' recommendation to MBCR management to terminate Plaintiff

on the basis of racial discrimination constituted interference with Plaintiff's employment

relationship by improper motive or improper means.

Defendants state as follows:

This is a claim for intentional interference with employment relations.  Whether plaintiff

actually was discriminating against African-American job applicants (plaintiff's issue number 1)

is not the issue in this case, because managers are free to act upon their belief that an employee

acted wrongfully (even if they are mistaken), without exposing themselves to individual liability.

In the employment context, Massachusetts law provides corporate officers with a conditional

privilege in order to protect their freedom of action as they conduct corporate affairs.  A

"defendant may escape liability if the interference [is] privileged as part of his employment

responsibilities.  This rule has particular force as applied to corporate officers, since their

freedom of action toward corporate purposes should not be curtailed by fear of personal

liability."  Steranko v. Inforex, Inc., 5 Mass. App. Ct. 253, 273, 362 N.E.2d 222, 235 (1977)

(internal citations omitted).

Accordingly, a supervisor's simple negligence, want of sound judgment, hasty action, or

even sloppy and unfair business practices in the discharge of an employee will not jeopardize the

privilege.  Such conduct is not actionable.  Weber v. Community Teamwork, Inc., 434 Mass.

761, 783, 752 N.E.2d 700, 716 (2001) (citing Gram v. Liberty Mutual Ins. Co., 384 Mass. 659,

665, 429 N.E.2d 21, 25 (1981)).  See also Sklar v. Beth Israel Deaconess Medical Center, 59

Mass. App. Ct. 550, 554, 797 N.E.2d 381, 386 ("negligent, sloppy or callous investigation" is not

actionable), review denied, 440 Mass. 1110, 801 N.E.2d 803 (2003).

15

With respect to plaintiff's contested issue of fact number 2, defendants state:  To establish liability, plaintiff must prove that the managers "acted out of malevolence, that is, with 'actual' malice."  Gram v. Liberty Mutual Ins. Co., 384 Mass. at 663, 429 N.E.2d 21 at 24.

Regarding defendant Elizabeth Bowden:  At issue is whether Bowden acted in accordance with the conditional privilege afforded managers.  Plaintiff proffers no evidence on this key issue and Bowden is entitled to judgment as a matter of law.  In plaintiff's concise summary of the evidence, his allegations regarding Bowden consist of the following:  Plaintiff contends that Bowden "made no effort to inform Plaintiff of [Leaton's] accusations and accepted them as true."  He also contends that she "made no inquiry of Plaintiff's fellow employees" and "made no effort to find information about Plaintiff's hiring practices."  He concedes that she met with him on March 26 and asked him questions about Leaton's accusations, but faults her for not giving him advance notice of the purpose of the March 26 meeting, and he faults her for accusing him of racism in hiring, using "extremely accusatory" "voice and body language."  As a matter of law, none of this is actionable.  Plaintiff proffers no evidence of actual malice on Bowden's part.

Regarding defendant Stephen Urban:  At issue is whether Urban acted in accordance with the conditional privilege afforded managers.  Plaintiff proffers no evidence on this key issue and Urban is entitled to judgment as a matter of law.  In plaintiff's concise summary of the evidence, his allegations regarding Urban consist of the following:  Urban attended the March 26 meeting, during which time Bowden questioned Mistovich on Leaton's allegations, and also was present at the meeting when Mistovich learned of his termination.  As a matter of law, this is not actionable.  Plaintiff proffers no evidence of actual malice on Urban's part.

Regarding defendant Stephen Nevero:  At issue is whether Nevero acted in accordance

16

with the conditional privilege afforded managers.  Plaintiff proffers no evidence on this key issue and Nevero is entitled to judgment as a matter of law.  In plaintiff's concise summary of the evidence, his allegations regarding Nevero consist of the following:  Nevero attended the March 26 meeting, during which time Bowden questioned Mistovich on Leaton's allegations, and later informed Mistovich of his termination.  As a matter of law, this is not actionable.  Plaintiff proffers no evidence of actual malice on Nevero's part.

Regarding Alison Leaton:  To the extent that Leaton is made part of this action, at issue would be whether she acted for an improper motive or used improper means.  Plaintiff proffers no evidence on this issue, and Leaton would be entitled to judgment as a matter of law.  In plaintiff's concise summary of the evidence, his allegations concerning Leaton consist of the following:  Plaintiff contends that Leaton met with him to go over the resumes of job applicants, and after he looked at the resume of one applicant, Leaton accused him to his face of discriminating against that job applicant because the applicant was black.  Leaton later reported this concern to Bowden.  As a matter of law, this is not actionable.  In his deposition testimony, Mistovich did not challenge the fact that Leaton believed that he was discriminating.  (Mistovich Dep. at 185-186.)   Plaintiff proffers no evidence of improper motive or improper means on Leaton's part.

## IV.   JURISDICTIONAL QUESTIONS

None.

## V.   QUESTION RAISED BY PENDING MOTIONS

There are no pending motions at the moment.  At issue, however, is whether Leaton will waive service and be made part of this action.  As noted above, plaintiff's attorney has recently asked whether Leaton would waive service.  If Leaton does not waive service, plaintiff's counsel

has stated that he would consent to the dismissal of the action against her without prejudice and would then file an action against her in state court.  Leaton is considering whether to waive service.  If she does waive service, she would want to have the opportunity to move for summary judgment.  There is no actionable claim against Leaton:  She merely passed on her concerns that a hiring manager was discriminating in the hiring process.

## VI.   <u>ISSUES OF LAW</u>

1.      Defendants contend for the reasons set forth in their Motion for Summary Judgment and Supporting Materials that Plaintiff cannot prevail in his claim of intentional interference with advantageous relations as a matter of law against Bowden, Urban, or Nevero.  Plaintiff, as stated in his Summary Judgment Opposition materials, disagrees with this position.

2.      Authorities relied on by the parties in their Summary Judgment materials are relied on as supporting authorities.

3.       Defendants object to certain evidence that plaintiff seeks to introduce.  Plaintiff has identified three witnesses (Suzanne Allen, Kevin Gahagan, and John Prugh) who have been identified in plaintiff's initial disclosures as knowledgeable about Plaintiff's employment history at Amtrak (his former employer).   Plaintiff has also proposed as an exhibit his annual performance reviews at Amtrak (plaintiff's proposed exhibit 17).  Evidence regarding plaintiff's work history at a previous employer should be excluded under Fed. R. Evid. 402 because it is irrelevant to this matter – it is plaintiff's hiring at MBCR which is at issue, not his employment at his previous employer.  Plaintiff has no evidence that any of the individual defendants were aware of plaintiff's hiring record at Amtrak and therefore this information could not have influenced their treatment of him.  Moreover, to the extent that plaintiff seeks to introduce this evidence to show that he is not the type of person who discriminates – and hence did not screen

out an African-American applicant – such evidence is irrelevant to the matters to be decided in an intentional interference claim. Whether he was actually discriminating is not at issue. Moreover, such evidence would be inadmissible under Fed. R. Evid. 404, because character evidence "is not admissible for proving action in conformity therewith." Moreover, any such evidence should be excluded under Fed. R. Evid. 403 because its probative value is substantially outweighed by its danger of unfair prejudice and misleading the jury. In particular, it is likely to confuse the jury about the issues to be decided in this lawsuit. At issue is not whether Eli Mistovich was actually discriminating, but instead what the defendants believed about Mistovich's hiring practices at MBCR.

4.    Plaintiff also has identified three witnesses (Courtney Clark, Harold Hoffman, and Fran O'Connor) who have been identified in his initial disclosure as knowledgeable about his lack of discrimination in dealing with employees at MBCR. Plaintiff had identified one witness (Bradley Winter) who has been identified in his initial disclosure as knowledgeable about his lack of discrimination in dealing with the union. Evidence regarding plaintiff's nondiscrimination practices in dealing with existing MBCR employees or the union should be excluded for the same reasons as those specified above. Plaintiff has identified another witness, Gerry DeModena, who was not identified in the initial disclosures. To the extent that Mr. DeModena is being offered for the same reason as these other witnesses, his testimony should also be excluded.

5.    Defendants also object to introducing any evidence regarding the manner in which Plaintiff claims he was escorted off MBCR's premises on the day of his termination. In plaintiff's concise summary of the evidence, he contends that he was "summarily marched out of the room by Urban and forced to clean out his office and company vehicle in full view of other

employees, a humiliating experience." Such evidence is irrelevant to a claim of intentional interference with employment relations and there is the danger that the jury would be confused or the defendants would be unfairly prejudiced by admitting this evidence.

6.        Plaintiff's Position on Defendants' Evidentiary Objections:

Plaintiff contends that evidence of his hiring record with respect to racial minorities during his years of employment at Amtrak is relevant and admissible. Plaintiff intends to offer this evidence through the testimony of knowledgeable MBCR employees who worked with Plaintiff at Amtrak (witnesses Clark, Hoffman, O'Connor and Winter); former Amtrak Human Resources employees who worked with Plaintiff at Amtrak; and Performance Evaluations of Plaintiff while at Amtrak. This testimony and these documents will show that not only did Plaintiff not ever engage in discriminatory practices; but that he was frequently commended for achieving and exceeding affirmative action goals for diversity in hiring. Defendants have asserted a qualified supervisory privilege to Plaintiff's claims of intentional interference. Plaintiff contends that the Defendants' unquestioning acceptance of false, unsubstantiated and uncorroborated charges of discrimination by an independent contractor consultant with no railroad hiring experience during the course of a so-called "investigation" constituted malice. Defendants failed to give Plaintiff any reasonable notice of the charges or realistic opportunity to rebut them. When Plaintiff desparately informed Defendants at a meeting when the charges were abruptly leveled at him that he had an exemplary minority hiring record at Amtrak, Defendant Bowden dismissed Plaintff's claim in writing, saying that this statement "cannot be validated by MBCR". Plaintiff contends, based on the objected to evidence, that Bowden's statement, adopted by the other Defendants and forwarded to MBCR's General Manager, with no effort at validation was blatantly false and constituted malice. Dissemination of false information with knowledge or

reckless disregard of its lack of truth is malice as a matter of law.  Draghetti v. Chmielinski, 416 Mass. 808, 816 (1994).

## VII.    REQUESTED AMENDMENTS TO THE PLEADINGS

None.

## VIII.    ANY ADDITIONAL MATTERS TO AID IN DISPOSITION OF THE ACTION

None.

## IX.    PROBABLE LENGTH OF THE TRIAL

The parties estimate approximately three half trial days.  The parties reserve the right to revise this estimate.

## X.    NAMES AND ADDRESSES AND TELEPHONE NUMBERS OF WITNESSES TO BE CALLED

**By Plaintiff:**

Eli Mistovich, Jr., 5 Leelyn Circle, Derry, NH (603) 437-3349;

Elizabeth Bowden, 48 Spenser Crescent; Guelph, Ontario, Canada, N1L2M1;

Stephen Urban, c/o Massachusetts Bay Commuter Railroad Co. ("MBCR"), 89 South St. Boston, MA  02111;

Stephen Neverro, c/o MBCR (same as Stephen Urban above);

Alison Leaton, 25 Mount Hood Road, No. 10, Brighton, MA, (617) 277-4628;

Suzanne Allen, Manager, Amtrak Human Resources, 253 Summer Street, Boston, MA 02210;

Kevin Gahagan, Head of Human Resources, Brigham and Woman's Hospital, 75 Francis Street, Boston, MA, (617) 732-5500;

Bradley Winter, Vice General Chairman, Brotherhood of Maintenance Employees, P.O. Box 89, Danvers, MA 01923, (978) 774-0254;

Courtney Clark, 9 Woodland Drive, Woodland, NH, 03848;

John Prugh, Massachusetts Bay Commuter Rail Program Director, c/o Massachusetts Bay Commuter Railroad, 89 South Street, 8th Floor, Boston, MA 02111;

Harold Hoffman, Crew Dispatcher Supervisor, MBCR, 32 Cobble Hill Road, Somerville, MA 02143;

Fran O'Connor, MBCR employee, 81 King street, Norfolk, MA 02056;

Gerry DeModena, MBCR employee, 127 St. Andrew Road, East Boston, MA 02128..

**By Defendants:**

Elizabeth Bowden, 48 Spenser Cresent, Guelph, Ontario, Canada, N1L2M1.

Stephen Urban, care of MBCR.

Stephen Nevero, care of MBCR.

Alison Leaton, 25 Mount Hood Road, Apt. 10, Brighton, MA

Kevin Lydon, care of MBCR.

Elizabeth Trowbridge, care of MBCR.

Plaintiff Eli Mistovich

Defendants reserve the right to call as rebuttal witnesses individuals who are not listed and the

right to call any of Plaintiff's witnesses.  Defendants also reserve the right to supplement this list.

XI.    **PROPOSED EXHIBITS**

    **By Plaintiffs:**

1.  Memorandum of September 25, 2003 to Stephen Neverro from Eli Mistovich (Urban Dep. Exh. 1);

2.  Resume of Marvin F. Morgan, Jr. (Urban Dep. Exh. 2);

3.  E-mails dated March 11, 2004 between Elizabeth Bowden and Alison Leaton (Neverro Dep. Exh. 5);

4.  Bowden diary note of March 15, 2004 (Neverro Dep. Exh. 6);

5.  Eli Mistovich list of track resumes dated January 20, 2004 (Neverro Dep. Exh. 8);

6.  Elizabeth Bowden interview questions to ask Eli Mistovich (Mistovich Dep. Exh. 11);

7.  October 13, 2003 position description for trackman (Mistovich Dep. Exh. 18);

8.  Alison Leaton schedule of trackman interviews November 24th and 25th, 2003 (Mistovich Dep. Exh. 19);

9.  Revised list of track resumes February 9, 2004 (Mistovich Dep. Exh. 20);

10. Alison Leaton schedule of track interviews Thursday March 4th and Friday, March 5th, 2004 (Mistovich Dep. Exh. 21);

11. Alison Leaton schedule of interviews Thursday March 11, 2004 (Mistovich Dep. Exh. 22);

12. Elizabeth Bowden interview questions to ask Eli Mistovich (Bowden Dep. Exh. 28);

13. E-mails between Elizabeth Bowden and Alison Leaton dated March 15th and March 16th, 2004 (Bowden Dep. Exh. 29);

14. Defendant Bowden's interview questions to ask Alison Leaton (Bowden Dep. Exh. 30);

15. Alison Leaton e-mail to Elizabeth Bowden March 25, 2004 (Bowden Dep. Exh. 31);

16. Elizabeth Bowden e-mail to Alison Leaton March 26, 2004 (Bowden Dep. Exh. 32);

17. Annual performance reviews of Plaintiff Eli Mistovich, Jr. at Amtrak for the years 1989, 1990. 1991, 1992, 1993, 1994, 1999 and 2000 (Exhibits A-H to Affidavit of Eli Mistovich, Jr. submitted in opposition to Summary Judgment Motion).

Plaintiff reserves the right to supplement the above list upon reasonable notice.

**By Defendants:**

Proposed Plaintiff's Exhibits 2, 3, 6, 7, 8, 10, 11, 12, 13, 14, and 16 and:

1.  S. Nevero notes of interview with Eli Mistovich on 3/26 (Bates No. M-0066, Nevero Dep. Ex. 7)

2.  Charts of Resumes Referred to Eli Mistovich by Alison Leaton (Bates Nos. M-0019-23) (Mistovich Dep. Ex. 9)

3.  Effective Interviewing Techniques (Bates nos. M-0029-64; Mistovich Dep. Ex. 13)

4.  Employee Policy Acknowledgement Form, signed by Eli Mistovich on 5/8/03 (Mistovich Dep. Ex. 14)

5.  HR, Personnel Requisition, Selection and Hiring (5 pages, dated July 1, 2003; Mistovich Dep. Ex. 15)

6.  HR, Diversity/EEO Policies and Procedures (2 pages, dated May 1, 2003; Mistovich Dep. Ex. 16)

7.  HR, Code of Conduct (9 pages, dated May 1, 2003; Mistovich Dep. Ex. 17)

8.  Track Interviews, March 4 and 5 (Bates no. M-0015) (Mistovich Dep. Ex. 23)

9.  Elizabeth Bowden, notes from 3/29/04 (Bates no. M-0025; Bowden Dep. Ex. 33)

Defendants also reserve the right to supplement this list.

## XII.    REMAINING OBJECTIONS TO EVIDENCE IDENTIFIED IN THE PRE TRIAL DISCLOSURES

As noted above, defendants object to evidence concerning plaintiff's performance while an employee of Amtrak, as well as evidence of other people's opinions regarding whether he was racist. Such evidence is not relevant to the issues to be decided at trial and is also inadmissible character evidence. Moreover, its probative value, if any, is far outweighed by the danger of unfair prejudice and jury confusion.

Respectfully submitted,

Eli Mistovich, Jr.,                          Elizabeth Bowden, Stephen Urban
by his attorney:                             and Stephen Nevero,
                                             by their attorney:


_____/s/ Frank J. Teague_____            _____/s/ Laurie F. Rubin_____
Frank J. Teague, Esq.                        Walter B. Prince, BBO# 406640
                                             Laurie F. Rubin, Esq., BBO#564947
Frank J. Teague & Associates                 Prince, Lobel, Glovsky & Tye, LLP
One Liberty Square, 4th Floor                585 Commercial Street
Boston, MA 02109                             Boston, MA  02109
(617) 350-7700                               (617) 456-8000
BBO#493780


Dated:  February 1, 2006